**Barbara B. McGRATH, a married woman filing individually, Plaintiff,**

v.

**Derek A. SCOTT, et. al., Defendant.**

**No. CIV.02–1605PHXROS.**

United States District Court, D. Arizona.

March 12, 2003.

Michael Larry Freeman, Michael L. Freeman PC, Phoenix, AZ, David J. Don, Marhoffer Don & Segal, PLLC, Scottsdale, AZ, for plaintiff.

Paul Joseph McGoldrick, Daniel William McCarthy, Scott Michael Zerlaut, Shorall McGoldrick Brinkmann, PC, Phoenix, AZ, for Derek A. Scott, Kristhy L. Scott, defendants.

James Nelson Smith, Jr., Office of Atty. Gen., Liability Management Section, Phoenix, AZ, for Faith Morgan, Mike Bonin, Tim Lane, Terry Conner, Dennis Garrett, State of Ariz., defendants.

## ORDER

SILVER, District Judge.

Plaintiff alleges that she received substantial personal injuries when Defendant Derek A. Scott ("Scott"), an officer with the Arizona Department of Public Safety ("DPS"), subjected her to an unprovoked assault during a routine traffic stop. Plaintiff filed a Complaint requesting damages against (1) Scott; (2) the State of Arizona ("State"); and (3) Faith Morgan, Mike Bonin, Tim Lane, Terry Conner, and Dennis Garrett (collectively "State Defendants"). The State and State Defendants and Scott move for dismissal. For the reasons set forth below, the Court (1) grants in part and denies in part the State and State Defendants Motion and (2) denies without prejudice Scott's Motion and State and State Defendants' Motion as it relates to Count Four.

## BACKGROUND

Plaintiff commenced this action in Maricopa County Superior Court on May 31, 2002. Defendants removed it on August 19,2002. (Docs. #1 and #2). In her Complaint, Plaintiff alleges four causes of action: (1) violations of the Fourth and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 against Scott; *(2)* violations of the Fourth and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 against State Defendants for supervisory liability; (3) assault and battery against Scott and the State; and (4) negligent hiring, training, retaining, and supervision against State Defendants and the State. (Doc. #1).

Scott filed his Answer on August 30, 2002. (Doc. #3). However, the State and State Defendants responded with a joint Motion to Dismiss, (Doc. #4-1) or alternatively,a Motion for More Definite Statement (Doc, #4-2). Plaintiff filed a Response including a Cross–Motion to (I) strike affidavits attached to the Motion (Doc. #5-1), and (2) amend the Complaint (Doc. #5-2). On September 30,2002, State Defendants filed a consolidated(1) Reply to their original Motion, and (2) Response to the Cross–Motion. (Doc. #6). Plaintiff never filed a reply to her Cross–Motion.

Most recently, Scott filed a separate Motion to Dismiss the assault and battery

claim against him. (Doc. # 7). Plaintiff responded on November 14, 2002 (Doc. # 8), and Scott replied on November 19,-2002 (Doc. # 10).

## DISCUSSION

This is a federal question case with state causes of action included under supplemental jurisdiction. The parties agree that Arizona law applies. The Motion to Dismiss requests dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

## I. Legal Standard

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. County of Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus. Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "The federal rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir.1997) (quoting Fed. R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202(2d ed.1990)). Indeed, though " 'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . .that is not the test.' " *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). " 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.*

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998);*see Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649–50 (9th Cir.1984);*W. Mining Council*, 643 F.2d at 624.

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988);*see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* §9:187, at 9–46 (2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations dis-

closing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.,* 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); *see Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). Indeed, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 (9th Cir.1998) (citing *Harrell v. United States,* 13 F.3d 232, 236 (7th Cir.1993)).

" 'However, material which is properly submitted *as part of the complaint* may be considered' on a motion to dismiss." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (quoting *Hal Roach Studios,* 896 F.2d at 1555 n. 19) (emphasis in original); *see Federal Civil Procedure Before Trial* § 9:212, at 9–54. Similarly, a district court may consider any documents referred to or "whose contents are alleged in a complaint and whose authenticity no party questions." *Id.* at 454; *see Lee,* 250 F.3d at 688 (citing *Parrino v. FHP. Inc.,* 146 F.3d 699, 705–06 (9th Cir.), *cert. denied,* 525 U.S. 1001, 119 S.Ct. 510, 142 L.Ed.2d 423(1998)); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001) (citing *Branch,* 14 F.3d at 453–54); *see also Robinson v. Fred Meyers Stores, Inc.,* 184 F.Supp.2d 968, 972 (D.Anz.2002); *see Federal Civil Procedure Before Trial* § 9:212.1, at 9–54. In addition, "even if the plaintiffs complaint does not explicitly refer to" a document, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiffs complaint necessarily relies" because this prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]" *Parrino,* 146 F.3d at 705–06. "Such consideration does 'not convert the motion to dismiss into a motion for summary judgment.' " *Branch,* 14 F.3d at 454 (quoting *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991)); *see Parrino,* 146 F.3d at 705–06; *Parks Sch. of Bus.,* 51 F.3d at 1484; *cf.* Fed. Rs. Civ. P. 12(b), 56.

At this stage of the litigation, however, the district court must resolve any ambiguities in the considered documents in the plaintiffs favor. *See Int'l Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *see also Smith,* 84 F.3d at 1217; *Miree,* 433 U.S. at 27 n. 2, 97 S.Ct. 2490.; *Federal Civil Procedure Before Trial* § 9:212.1c, at 9–55.

## II. Analysis

### A. State and State Defendants' Motion to Dismiss

State and State Defendants' Motion to Dismiss argues that Plaintiffs federal question supervisory liability § 1983 claim and state law claims fail. The Court first turns to the federal claim.

### 1. Federal Question § 1983 Claim

Section 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution. It fails to create any substantive rights; instead, it constitutes a vehicle whereby plaintiffs can challenge actions by governmental officials. "To prove a case under § 1983, the

plaintiff must demonstrate that (1) the action occurred 'under color of law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002).

Neither side contests that Defendants acted under color of state law. Instead, the dispute centers on whether the Defendants violated Plaintiffs Fourth and Fourteenth Amendment rights. Plaintiff alleges a supervisory liability § 1983 action against the State Defendants both individually and in their official capacity. The Court finds that only Plaintiffs personal capacity claim survives the Rule 12(b)(6) Motion to Dismiss for failure to state a claim.

### a. Plaintiff Concedes No Official Capacity Claim Exists Against State Defendants

In his Response, Plaintiff wrote that he "stipulates to dismiss the [State Defendants] in their official capacity only." (Response p.11) (Doc. #5). Therefore, this count will be dismissed.

### b. Personal Capacity Claims Exist Against State Defendants

Plaintiff claims personal liability under § 1983 against the State Defendants, all allegedly Scott's supervisors. (Complaint ¶¶ 3–7) (Doc. #1). Like other § 1983 defendants, supervisory officials may not be held liable under § 1983 on the basis of respondeat superior, but only for their own wrongful behavior. *Hansen v. Black,* 885 F.2d 642, 645–46 (9th Cir.1989) (holding no respondeat superior liability for supervisors under § 1983); *see also Monell v. Dept. of Social Services,* 436 US. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding no respondeat superior liability for municipalities under § 1983).

In their pleadings, both parties rely on cases involving questions of municipal lia-

bility under § 1983 to establish the legal standard for supervisory liability under § 1983. *See* Motion at pp.4–5 (Doc. # 4) (citing to *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), *Merritt v. County of Los Angeles,* 875 F.2d 765 (9th Cir.1989), and *Davis v. City of Ellensburg,* 869 F.2d 1230 (9th Cir.1989)); Response at p.7 (Doc. # 5) (citing to *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621 (9th Cir.1988)). However, municipal and supervisory liability present distinct and separate questions that are treated and analyzed as such. *Larez v. City of Los Angeles,* 946 F.2d 630, 640 (9th Cir.1991) (recognizing that personal capacity claims against supervisors represent a separate and distinct claim from *Monell* official capacity claims); *Guillory v. County of Orange,* 731 F.2d 1379, 1382 (9th Cir.1984)("*Monell* does not concern liability of individuals acting under color of state law"). Supervisory liability represents a form of personal liability against an individual, while municipal liability is entity liability.

Supervisory liability concerns whether supervisory officials' own action or inaction subjected the Plaintiff to the deprivation of her federally protected rights. Generally, liability exists for supervisory officials if they personally participated in the wrongful conduct or breached a duty imposed by law. *See. e.g. Jones,* 297 F.3d at 937; *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir.1998); *L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir.1996); *Larez,* 946 F.2d at 646; *Hansen,* 885 F.2d at 645–46; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680 (9th Cir.1984); *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). In contrast, municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs feder-

ally protected rights. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

Typically, claims asserted against supervisory officials in both their individual and official capacities provide bases for imposing both supervisory liability (the individual claim) and municipality liability (the official capacity claim) if the supervisor constitutes a policymaker. *See, e.g., Larez,* 946 F.2d 630 (using claim against a police commissioner as basis for both supervisory and municipal liability). However, in this case, Plaintiff stipulates to dismissal of her official capacity claim against all State Defendants. Therefore, only individual supervisory liability is at issue.

In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court held that the defendant supervisory officials lacked individual responsibility for the constitutional violations committed by the city's police officers. *Id.* at 373–77, 96 S.Ct. 598. Despite the district court's finding that the violations were not "rare, isolated instances" and occurred in "unacceptably high numbers," the Supreme Court stated that "there was no showing that the behavior of the ...police was different in kind or degree from that which exists elsewhere." *Id.* at 375, 96 S.Ct. 598.

Individual liability under § 1983 failed to exist for each of the supervisory officials because "there was no affirmative link between the occurrence of the various incidents of police misconduct and the

adoption of any plan or policy by [the defendants]—express or otherwise—showing their authorization or approval of such misconduct." *Id.* at 371, 96 S.Ct. 598. The defendants mere failure to act in the face of the constitutional violations failed to provide a sufficient basis for imposing § 1983 liability. *Id.* at 376, 96 S.Ct. 598.[1] The Court determined that something more than mere failure to control must be shown in order to hold the supervisor liable for his own alleged wrongs.

In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court provided further guidance on the necessary degree of fault that must be evidenced by municipality inaction to give rise to municipal liability under § 1983. The Supreme Court established deliberate indifference as the standard for holding a municipality liable. *Id.* at 388, 109 S.Ct. 1197.

Numerous lower courts have adopted this deliberately indifferent standard for supervisory liability claims.[2] The Ninth Circuit followed this approach in *L.W.,* when it concluded:

> that in order to establish Section 1983 [supervisor] liability in an action against a state official ...the plaintiff must show that the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it. Only if the state

1. The Court notes that it is not entirely clear that *Rizzo* actually addresses supervisory liability. The equitable relief at issue contemplated changing city policies, suggesting the case actually represents municipal liability. *Id.* at 365–66, 96 S.Ct. 598. However, *Monell* reads *Rizzo* as deciding "that the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell,* 436 U.S. at 694 n. 58, 98 S.Ct. 2018. This principal holds true for both

municipal and supervisory liability under § 1983.

2. *See. e.g., Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443 (5th Cir.1994) (enbanc); *Langley v. Adams County,* 987 F.2d 1473 (10th Cir. 1993); *Moffitt v. Town of Brookfield,* 950 F.2d 880 (2d Cir.1991); *Greason v. Kemp,* 891 F.2d 829 (11th Cir.1990); *Leach v. Shelby County Sheriff,* 891 F.2d 1241 (6th Cir.1989); *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720 (3d Cir.1989).

official was deliberately indifferent does the analysis then proceed further to decide whether the conduct amounts to a constitutional violation.

*L.W.*, 92 F.3d at 900. Therefore, the relevant inquiry in the Ninth Circuit is whether the supervisor appeared "deliberately indifferent" in supervising subordinates, and, if so, whether that deliberate indifference actually caused the deprivation of the plaintiffs federal rights. Unfortunately, neither the Ninth Circuit nor the Supreme Court provide clear guidance on the definition of "deliberately indifferent" for supervisory liability claims under § 1983.

In *Redman v. County of San Diego,* 942 F.2d 1435 (9th Cir.1991), the Ninth Circuit determined the level of improper conduct that must be shown toward a pretrial detainee to establish insufficient protection and, thus, a violation of the right to personal security under the Fourteenth Amendment. Borrowing from the Ninth Circuit's then valid definition of deliberate indifference in Eighth Amendment cases, the court held that this standard constituted the proper level of culpability. *Id.* at 1443. The court defined deliberate indifference as:

> conduct that is so wanton or reckless with respect to the "unjustified infliction of harm as is tantamount to a knowing willingness that it occur," will suffice to establish liability because it is conduct equivalent to a deliberate choice. This may be termed *"reckless indifference."*

*Id.* (citations omitted) (emphasis added). However, the court noted that it left open the possibility that *"gross negligence or recklessness"* may give rise to a due process violation outside the jail or prison context. *Id.* at 1440 n. 6 (emphasis added).

After adopting deliberate indifference and establishing a definition of the term, the Ninth Circuit applied this standard to determine if the plaintiff adequately presented a case for supervisory liability

under § 1983 against various individual defendants. *Id.* at 1446–49. The court explained that " '[a] supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations.' " *Id.* at 1446 (quoting *Hansen,* 885 F.2d at 646). With respect to the second method of establishing supervisory liability, the court remarked that " '[t]he requisite causal connection can be established ... by setting in motion a series of acts by others which the actor *knows or reasonably should know* would cause others to inflict the constitutional injury.' " *Id.* at 1447 (quoting *Johnson,* 588 F.2d at 743–44) (emphasis added). Therefore, the Ninth Circuit endorsed a definition of deliberate indifference encompassing an *objective recklessness* standard when determining supervisory liability under § 1983 for Fourteenth Amendment, jail and prison context cases.

A few years later, the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), redefined the Eight Amendment's deliberate indifference standard and rejected the objective recklessness standard adopted in *Redman* for Fourteenth Amendment § 1983 jail and prison context cases—a standard which had been borrowed from Ninth Circuit law on the Eight Amendment standard. The Supreme Court cited to *Redman* as an example of a lower court "equat[ing] deliberate indifference with recklessness." *Id.* at 836, 114 S.Ct. 1970. However, the Supreme Court explained that the term recklessness was not self-defining, as it could be determined either subjectively or objectively. *Id.* at 837, 114 S.Ct. 1970. It then adopted *subjective recklessness* because the Eighth Amendment only prohibited cruel and unusual

punishment. *Id.* at 837–38, 114 S.Ct. 1970. Absent the prison official's subjective awareness that his or her actions created a substantial risk of harm, the Supreme Court reasoned, the actions could not be deemed punishment. *Id.* 838–39, 114 S.Ct. 1970.

The Supreme Court rejected the petitioner's proposed objective recklessness definition of deliberate indifference created by *Canton,* 489 U.S. 378, 109 S.Ct. 1197, because "the 'term was used... for the quite different purpose of identifying the threshold for holding a *city* responsible for the constitutional torts committed by its inadequately trained agents.'" *Id.* at 840–41, 109 S.Ct. 1197 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 124, 112 S.Ct. 1061, 117 L.Ed.2d 261(1992)) (emphasis added). Moreover, "considerable conceptual difficulty would attend any search for the subjective state of mind of a *governmental entity, as distinct from that of a governmental official.*" *Id.* (emphasis added).

Because the *Redman* court adopted the Eighth Amendment deliberate indifference standard for § 1983 Fourteenth Amendment jail and prison context cases because it saw no reason to apply different standards of tolerance for inmates versus pretrial detainees, *Redman,* 942 F.2d at 1442–43, post-*Farmer,* it can be persuasively argued that the objective recklessness definition of deliberate indifference has been replaced with a subjective recklessness standard for § 1983 Fourteenth Amendment jail and prison context cases.

In *L.W.,* Judge Goodwin noted the Ninth Circuit's lack of "clear guidance" on the degree of culpability necessary to support § 1983 supervisory liability claims for dangerous conditions. 92 F.3d at 895. *L.W.* laid to rest the notion that gross negligence sufficed, instead expressly adopting the deliberate indifference standard. *Id.* at 900. Then, the Ninth Circuit cited with

approval several other circuit's cases adopting a *subjective recklessness* definition of deliberate indifference, but adopted an *objective recklessness* standard. *Id.* Several subsequent Ninth Circuit cases rely on this definition. *See, e.g., Christie v. Iopa,* 176 F.3d 1231, 1240 n. 7 & 1241 (9th Cir.1999) (tracing the Ninth Circuit opinions and criticizing those that hold or note that municipal liability attaches for "gross negligence or reckless indifference" and embracing instead the deliberate indifference standard defined as when "a municipal actor disregarded a *known or obvious* consequence of his action") (citations and quotations omitted) (emphasis added); *Huffman v. County of Los Angeles,* 147 F.3d 1054, 1059 (9th Cir.1998).

Unfortunately, other Ninth Circuit cases, however, articulate the requirement for establishing supervisory liability differently. For example, in *Watkins v. City of Oakland,* 145 F.3d 1087 (9th Cir.1998), the Court addressed a § 1983 supervisory liability claim for excessive force in effecting an arrest. Quoting a pre-*L.W.* case, the court explained:

> A supervisor can be liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation ....; or for conduct that showed a *reckless and* callous *indifference* to the rights of others."

Id. at 1093(quoting *Larez,* 946 F.2d at 645) (emphasis added); *Dubner v. City and County of San Francisco,* 266 F.3d 959, 969 (9th Cir.2001) (applying *Watkins* standard in § 1983 unlawful arrest claim). In both these cases, the Ninth Circuit relies on pre-*L.W.* standards for establishing supervisor liability without ever mentioning *L.W.*'s adoption of the deliberately indifferent standard.

However, these different articulations of the standard for supervisory liability can

be reconciled. In *L.W.*, the court addressed supervisor liability for creating dangerous conditions, not supervisor liability for excessive force under § 1983. Thus, while the court adopted the deliberate indifference standard for the necessary degree of fault in supervisor liability claims, it only did so in the context of dangerous conditions claims. In subsequent cases addressing supervisor liability for excessive force, the parties never urged the court to extend *L.W.*'s deliberately indifferent standard beyond the dangerous conditions context. Therefore, the court simply applied the previously articulated standard for supervisory liability under § 1983. *Watkins,* 145 F.3d at 1093; *Dubner,* 266 F.3d at 969.

Consequently, this Court must first determine if the Ninth Circuit's adoption in *L.W.* of the deliberately indifferent standard for dangerous conditions claims modifies the standard for supervisory liability in excessive force cases. The older standard appears to encompasses a broader standard for supervisory liability than the "deliberately indifferent" standard endorsed by the Supreme Court for municipal liability in *City of Canton,* and the Ninth Circuit in *L.W.* It reduces the quantum of proof for supervisory liability to one of a showing of "reckless or callous indifference" by the supervisor. Furthermore, no valid reason has surfaced in any reported decision that justifies treating supervisory liability claims under § 1983 for creating dangerous conditions different from supervisory liability claims under § 1983 for excessive force.[3] Therefore, the Court finds that the deliberately indifferent standard adopted in *L.W.* applies generally to all supervisory liability claims under § 1983. A supervisor can be liable in his individual capacity for (1) his own culpable action or inaction in the training, supervision, or control of his subordinates; (2) for his acquiescence in the constitutional deprivation; or (3) for conduct that shows a ***deliberate indifference*** to the rights of others. Deliberate indifference encompasses recklessness.[4]

State Defendants argue for dismissal of Plaintiffs supervisor liability claim on two grounds: (1) failure to state a claim upon which relief may be granted; and (2) qualified immunity. Neither argument persuades the Court.

### (1) Plaintiff Adequately States a Claim

■ In *Leatherman v. Tarrant County,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court unanimously rejected a heightened pleading requirement for federal court § 1983 municipal liability claims. The decision excuses plaintiffs from pleading specific evidentiary facts that they might not be able to obtain prior to discovery due to exclusive municipality control.[5]

---

**3.** In fact, the *L.W.* court framed the issue needing clarification in broad terms:

> [The Ninth Circuit has] not, however, expressed with clarity the legal principles by which the government's supervisory employees become liable for damages caused by third parties to the various type of victims who seek money damages under § 1983 ....

*L.W.,* 92 F.3d at 896.

**4.** The Court does not decide if the recklessness standard is objective or subjective, as in either case Plaintiffs Complaint adequately states a claim. *See, supra* pp. 1224–1226(suggesting post-*Farmer,* deliberate indifference should be defined as requiring subjective recklessness).

**5.** This Court finds reasonable the explanation of this legal principle set forth by Judge Pratt of the Second Circuit:

> When commencing a suit of this type neither the plaintiff nor his attorney is likely to know much about the relevant internal operations of the police department, nor about the disciplinary history and record of the particular police officers involved.

However, an argument exists that *Leatherman* fails to apply to claims of supervisory liability. A distinction exists between municipal liability and supervisory liability under § 1983: municipal liability constitutes entity liability while supervisory liability constitutes personal liability. Personal liability, unlike entity liability, is subject to qualified immunity defenses. When rendering its decision, the Supreme Court expressly left open whether its "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Leatherman*, 507 U.S. at 166–67, 113 S.Ct. 1160.

This Court finds that it must apply pleading standards in a realistic, common-sense fashion that recognizes that at the pleading stage (i.e. prior to discovery occurring) a plaintiff frequently lacks the actual details concerning supervisors' interactions with employees accused of committing constitutional violations.

Some Ninth Circuit decisions reject boilerplate or conclusory allegations of a supervisor's personal involvement in an alleged deprivation of constitutional rights. *See, e.g., Barren v. Harrington*, 152 F.3d 1193, 1194–95(9th Cir.1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."). Other decisions reject complaints that fail to clearly apprise supervisory defendants of the claims made against them. *See, e.g., McHenry v. Renne*, 84 F.3d 1172,1176 (9th Cir.1996) (dismissing fifty-three page complaint that (1) failed to specify which defendants were liable on which of the claims and (2) delineated the

> In view of the strong policies favoring suits protecting the constitutional rights of citizens, we think it would be inappropriate to require plaintiffs and their attorneys before commencing suit to obtain the detailed information needed to prove a pat-

claims in "122 paragraphs of confusing factual allegations and then merely [made] perfunctory reference to a legal claim said to arise from these undifferentiated facts"). Neither situations exists in this case.

First, Plaintiffs Complaint alleges facts pointing to each of the State Defendants' personal involvement in her deprivation of constitutional rights. The Complaint alleges specific instances of prior misconduct involving Scott during his employment with the U.S. Marines, the Colorado State Patrol, and the Arizona DPS. (Complaint ¶¶ 22–23, 27–28) (Doc. # 1). Moreover, the Complaint cites a particular Internal Affairs Investigation that resulted in Scott receiving counseling. *Id.* at ¶¶ 27–28. While these allegations fail to contain exhaustive details of the alleged instances of prior misconduct, Plaintiff is not required to know such details of the internal operations of the U.S. Marines or police departments prior to discovery. The Complaint goes on to allege *by name* that each State Defendant knew of these prior instances of misconduct, yet "failed to take sufficient action in terms of training, hiring, retaining and supervision to prevent Defendant Scott from using excessive force against [Plaintiff]." *Id.* at ¶¶ 24–26, 29. Next, the Complaint provides details of the investigation conducted under State Defendants' direction into Plaintiffs alleged assault by Scott. *Id.* at ¶¶ 46–52. Finally, the Complaint alleges that State Defendants "were deliberately indifferent, reckless, knew about and acquiesced, gave tacit authorization and/or ratified or condoned the violations . . . ." *Id.* at ¶ 63. Taken as a whole, these allegations sufficiently satisfy Fed.

> tern of supervisory misconduct in the form of inadequate training, improper policies, and toleration of unconstitutional actions by individual police officers.
> *Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir.1986).

R.Civ.P. 8's notice pleading standard and state a claim for supervisory liability under § 1983 against each of the State Defendants. *See generally Jones*, 297 F.3d at 937 n. 4.

Second, Plaintiffs eleven page Complaint clearly informs State Defendants of the claims against them and conforms with the notice pleading standard of Fed.R.Civ.P. 8. Unlike the rambling, narrative-style, fifty-three page complaint in *McHenry*, the case relied on by State Defendants in making their argument for failure to state a claim, Plaintiffs Complaint clearly lists the facts and allegations in the format of Fed. R.Civ.P. 8. Furthermore, Plaintiff labels each cause of action in bold with the names of the defendants involved beside it. No doubt exists to which claims apply to which Defendants, to some extent confirmed by the fact that Scott already filed his Answer. (Doc. # 3).

**(2) Qualified Immunity Fails to Bar the Individual Claims**

The Eleventh Amendment applies only when a federal court claimant seeks to establish liability that operates in substance against state governments. Therefore, it fails to apply when a claimant seeks to recover damages against a state public official in her personal capacity. *Hafer v. Melo*, 502 U.S. 21,. 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, individual claims against state officials may "hamper" performance of public duties. *Hafer*, 502 U.S. at 31, 112 S.Ct. 358. Consequently, the Supreme Court turns to "personal immunity jurisprudence" to address this concern. *Id.*

Public officials can defeat individual § 1983 claims by assertion of common-law immunity as an affirmative defense. While the language of § 1983 fails to provide for immunities, the Supreme Court

has held that, in enacting the original version of § 1983 in 1871, Congress did not intend "to abolish wholesale" all common-law immunities. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *see also Will v. Michigan Dept. State Police*, 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law").

In defining qualified immunities, the Supreme Court "diverge[s] to a substantial degree from the historical standards." *Wyatt v. Cole*, 504 U.S. 158, 170, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (Kennedy, J., concurring). The Supreme Court explains:

> Although it is true that we have observed that our determinations as to the scope of official immunity are made in the light of the common-law tradition, we have never suggested that the precise contours of official immunity can and should be slavishly derived from the often arcane rules of the common-law. This notion is plainly contradicted by *Harlow [v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ]*, where the Court completely reformulated qualified immunity along principles not at all embodied in the common-law, replacing the inquiry into subjective malice so frequently required at common-law with an objective inquiry into the legal reasonableness of the official actions.

*Anderson v. Creighton*, 483 U.S. 635, 644–45, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

Whether and to what extent a § 1983 defendant benefits from protection by an immunity from liability involves a question of federal law. *Howlett v. Rose*, 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Kimes v. Stone*, 84 F.3d 1121, 1126–28 (9th Cir.1996). The "immunity

question involves the construction of a federal statute," therefore, state law immunity defenses and privileges cannot control a § 1983 claim. *Wood v. Strickland,* 420 U.S. 308, 314, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Whether a public official can claim an absolute or qualified immunity depends upon the nature of the function she carried out. *See, e.g., Antoine v. Byers & Anderson,* 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Absolute immunity provides protection from personal liability even for clearly erroneous or malicious behavior. Qualified immunity protects from liability as long as the official did not contravene clearly established federal law. *Anderson,* 483 U.S. 635, 107 S.Ct. 3034; *Harlow,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396.

The Supreme Court regards qualified immunity as the norm because "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Court "has generally been quite sparing in its recognition of claims to absolute official immunity." *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). It engages a presumption "that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns,* 500 U.S. at 486–87, 111 S.Ct. 1934. Therefore, an official claiming absolute immunity bears the burden of showing that such immunity "is justified by overriding considerations of public policy." *Forrester,* 484 U S. at 224, 108 S.Ct. 538.

In *Harlow,* the Supreme Court established the test for qualified immunity as whether the official violated "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. The Supreme Court simplified the qualified immunity defense by defining it using objective terms, which lower courts could use to decide the issue as a matter of law. *See Id.* at 819, 102 S.Ct. 2727.

Qualified immunity seeks to reconcile *two* important competing considerations. First, the interest in providing compensation to persons whose federally protected rights have been violated. "When governmental officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.'" *Anderson,* 483 U.S. at 638, 107 S.Ct. 3034 (quoting *Harlow,* 457 U.S. at 814, 102 S.Ct. 2727). Second, "permitting damage suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* Qualified immunity seeks to balance these two competing interests by protecting public officials from personal liability as long as they did not violate clearly established federal law.

Unfortunately, the Supreme Court provides lower courts with little guidance on how to evaluate whether federal law was "clearly established." In *Anderson,* the Supreme Court summarized the *Harlow* standard:

The operation of this [objective reasonableness] standard ... depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action

that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights ... [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: **The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.** This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639–40, 107 S.Ct. 3034 (emphasis added); *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting the above from *Anderson* and noting that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); *also Capoeman v. Reed*, 754 F.2d 1512,1514 (9th Cir.1985) (commenting on lack of clear standards and holding that "in the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established ....").

In *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), the Supreme Court provided additional guidance, stating that the "clearly established" standard "is simply the adaptation of the fair warning standard to give officials ... the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *Id.* at 270–71, 117 S.Ct. 1219.

The Supreme Court reaffirmed *Lanier* just nine months ago. In *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court reversed the Eleventh Circuit's determination that qualified immunity protected prison guards from personal liability because no prior cases with "materially similar" facts existed. *Id.* at 2519. Instead, the Supreme Court explained, qualified immunity depends on if "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* at 2516 (quoting *Lanier*, 520 U.S. at 269, 117 S.Ct. 1219). Thus, officials may be on notice that their conduct violates clearly established law even in situations with novel factual circumstances. *Id.* The key determination centers on fair warning, not the similarity of the facts. *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir.2002).

The Ninth Circuit developed a test for qualified immunity based on the above guidance from the Supreme Court. At times, the Ninth Circuit describes this test as two-part, and at other times as three-part:

[A]pplication of the *Harlow* standard varies depending on the type of case we are addressing. In classes of cases in which we have considered it helpful we have divided the *Harlow/Anderson* inquiry into various two-part or three-part tests. In other types of cases, we have straightforwardly conducted the *Harlow/Anderson* inquiry, without any need

for mediating doctrines or multipronged test.

*Grossman v. City of Portland,* 33 F.3d 1200, 1208 (9th Cir.1994) (footnote omitted). *See, e.g., Sweaney v. Ada County,* 119 F.3d 1385, 1388 (9th Cir.1997) (defining three-part test as "(1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful"); *Trevino v. Gates,* 99 F.3d 911, 916 (9th Cir.1996)(defining two-part test as if "(1) the 'right' [defendants] allegedly violated was not 'clearly established at the time of the violation, or (2) if a reasonable [official] would have thought that the defendants' actions were constitutional").

In 1980, the Supreme Court held in *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), that qualified immunity constitutes an affirmative defense that the defendant official has the burden of pleading. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (*quoting Gomez* ); *Harlow,* 457 U.S. at 815, 102 S.Ct. 2727 (stating that qualified immunity "is an affirmative defense that must be pleaded by a defendant official"). However, the Supreme Court leaves open the question of the burden of persuasion. The Ninth Circuit fills this gap by establishing a switching burden of persuasion.

First, after the defendant properly raises the defense of qualified immunity, the plaintiff initially bears the burden of showing the violation of a "clearly established" federal right. *Sweaney v. Ada County,* 119 F.3d 1385, 1388 (9th Cir.1997)("The plaintiff bears the initial burden of proving that the right was clearly established."); *Trevino v. Gates,* 99 F.3d 911, 916–17 (9th Cir.1996) (same); *Houghton,* 965 F.2d at

1534 ("[Plaintiff] bears the initial burden of proving that the rights allegedly violated by [Defendant] were clearly established at the time of the alleged misconduct.").

However, after Plaintiff makes the above showing, the ultimate burden of persuasion then switches back to the defendant officials. *Trevino,* 99 F.3d at 916–17 (stating that defendants bear the final burden of proving their conduct reasonable); *Houghton v. South,* 965 F.2d 1532, 1534 (9th Cir.1992) (stating that the defendant "carries the burden of proving that his 'conduct was reasonable under the applicable standards ....'"); *Benigni v. City of Hemet,* 879 F.2d 473, 479 (9th Cir.1988) ("the burden of proving the defense lies with the official asserting it").

Here, State Defendants asserted the affirmative defense of qualified immunity. Therefore, the burden of persuasion shifted to Plaintiff to establish a violation of a clearly established federal right. This determination depends on whether the law in July 2001 gave State Defendants fair warning that their alleged action/inaction violated the constitution. As explained by the Supreme Court in *Hope,* fair warning may exist even when facts vary. *Hope,* 122 S.Ct. at 2516. Instead of factual similarity, the inquiry centers on if a reasonable supervisor would be on notice that his conduct violated constitutional rights. *Id.*

The Ninth Circuit recognized supervisory liability under § 1983 at least as far back as 1978. *See Johnson,* 588 F.2d at 743 (holding that inaction by sheriff sufficiently establishes supervisory liability under § 1983 because it set "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the· constitutional injury"). Throughout the ensuing twenty-five years, the Ninth Circuit continued to hold supervisors personally liable for the actions of their subordinates. *See, e.g.,*

*Jones,* 297 F.3d at 937; *Watkins,* 145 F.3d at 1093; *L.W.,* 92 F.3d at 900; *Larez,* 946 F.2d at 646; *Hansen,* 885 F.2d at 645–46; *Taylor,* 880 F.2d at 1045; *Ybarra,* 723 F.2d at 680. Therefore, if the facts support it, reasonable supervisors would be aware of the prospect of being held personally liable under § 1983 for constitutional violations perpetrated by subordinates.

The most recent articulation of the standard for supervisor liability in excessive force claims appears to be by the *Watkins* court:

> A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . .; or for conduct that showed a reckless or callous indifference to the rights of others.

*Watkins,* 145 F.3d at 1093 (internal quotations, citations and corrections omitted).[6] Applying this standard to the facts alleged in Plaintiffs Complaint, enough exists to take the matter outside the protective parameter of qualified immunity, i.e. that fair warning exists. Plaintiff alleges that State Defendants ignored numerous prior instances of misconduct by Scott, hired him, and allowed him to patrol without proper training or supervision. The Ninth Circuit, applying the above standard, holds supervisors liable in similar factual circumstances. *Watkins,* 145 F.3d at 1093–94; *Larez,* 946 F.2d at 645.

For example, in *Watkins,* an excessive force case, the Court denied qualified immunity to a police chief who signed an internal affairs report dismissing plaintiffs complaint without conducting any investigation into the alleged excessive use of force by his subordinates because Ninth Circuit law "clearly established" such action allowed supervisory liability under § 1983. *Watkins,* 145 F.3d at 1093–94; *see also Larez,* 946 F.2d at 645 (holding supervisor liable when he signed a letter stating that none of plaintiffs excessive force complaints against his subordinates could be sustained).

State Defendants attempt to distinguish these cases by their failure to perform any affirmative act like signing a letter or report. (Reply p.8) (Doc. # 6). This argument fails. In both cases, the Ninth Circuit articulated the complete standard for supervisory liability under § 1983. This standard makes clear that supervisors may be held liable even in the absence of affirmative actions, simply for "reckless or callous indifference." Therefore, these cases give fair notice that supervisory liability may attach in situations as alleged by Plaintiff, where the supervisor never signed anything and behaved with indifference, Moreover, the *Watkins* court also noted that liability existed because the supervisor "did not establish new procedures . . . despite evidence of numerous injuries to suspects [other then the plaintiff] . . . ." *Id.* at 1093. Thus, that case explicitly informs State Defendants of possible liability for failing to act after learning of prior instances of excessive force.

Finally, State Defendants argue, relying on an Eleventh Circuit opinion, that supervisory liability "cannot be based on actions that should be obvious such as not assaulting someone . . . ." (Reply p.7) (Doc. # 6). Reliance on this case fails for two reasons.

---

**6.** The Court notes that this standard appears to have been modified by the Ninth Circuit in *L.W.,* 92 F.3d at 900, to require "deliberate indifference" instead of simply "reckless or callous" indifference. However, because the Ninth Circuit has yet failed to clearly explained this modification in terms of its excessive force supervisory liability standard, the Court concludes that no clearly established law exists in the Ninth Circuit. Therefore, this Court will not hold State Defendants to the modified, more narrow standard.

First, the case involves municipal liability, not supervisory liability. *Sewell v. Town of Lake Hamilton,* 117 F.3d 488 (11th Cir.1997). Therefore, the court's analysis focuses on whether the plaintiff sufficiently alleged that failure to train established a policy or custom of the municipality, but establishing a policy or custom is not relevant for a supervisory liability claim.

Second, even if the case provides insight into supervisory liability, it is distinguishable. In *Sewell,* the court determined that a failure to train claim could not be based on the obvious illegal action of sexual assault during an arrest. *Id.* at 489–90. However, Plaintiffs allegations center on excessive use of force. Police frequently and legally use force, but not sexual assault, to apprehend a suspect. Therefore, a line between legal and illegal use of force exists, where no such line exists for sexual assault because it is obvious the technique should never be used to apprehend a suspect. Training on the use of force provides a benefit by educating law enforcement officers on what non-obvious actions are illegal excessive use of force. Consequently, failure to train on the use of force provides a valid basis for supervisory liability under some circumstances.

Plaintiffs have met their burden of establishing that the alleged violation involves clearly established law. Therefore, the burden of persuasion now switches back to the State Defendants to prove their conduct reasonable.

### 2. State Claims

Plaintiff alleges two state law claims: (1) assault and battery against Scott and the State; and (2) negligent hiring, training, retaining, and supervision against State Defendants and the State. The Court only possesses jurisdiction over these claims pursuant to supplemental jurisdiction. 28 U.S.C. § 1367. The State argues that the assault and battery count must be dismissed because Arizona grants immunity for any claims arising out of an alleged felonious act of a public employee. State Defendants argue that Arizona's notice of claim statute bars the negligence count against them. The Court (1) finds the State's argument persuasive, and (2) denies without prejudice the portion of the Motion to Dismiss containing the State Defendants' notice of claim argument, giving State Defendants' leave to file a Summary Judgment Motion on this issue.

### (a) Immunity Pursuant to A.R.S. § 12–820.05(B)

■ Plaintiffs third cause of action alleges assault and battery against (1) Scott directly and (2) the State under the doctrine of ***respondeat superior.*** (Complaint ¶¶ 67–73) (Doc. # 1). The State argues for immunity on this claim pursuant to A.R.S. § 12–820.05(B), which provides that:

> A public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action.

A.R.S. § 12–820.05(B). The State maintains that the Complaint asserts that Scott committed a felony, aggravated assault, against Plaintiff. (Response p.9) (Doc. # 4) (citing Complaint ¶¶ 34–42, 67–73 and A.R.S. § 13–1204(A)(1), (8)). Moreover, it argues that the Complaint fails to allege any facts supporting either the conclusion that Scott possessed a propensity for such assaults or that the State knew of such a propensity. *Id.*

Plaintiff responds that A.R.S. § 12–820.05(B) fails to apply "because no court has Found ... Scott's actions to be a criminal felony, ... a prerequisite to the finding of... immunity ...." (Reply p.11)

(Doc. # 5). Furthermore, Plaintiff argues that even if the statute applied, the State knew of Scott's "propensity for losing his temper, as demonstrated by his prior acts of misconduct . . . ." *Id.*

In its Reply, the State admits that Arizona courts never interpreted the requirements for establishing immunity under A.R.S § 12–820.05(B). However, the State then cites to a case interpreting the indemnification exclusionary provision of A.R.S. § 41–621(L)(1), which contains the exact same language as the immunity provision of A.R.S. § 12–820.05(B).[7] In *State v. Heinze*, 196 Ariz. 126, 993 P.2d 1090 (App. 1999), Judge Fidel of the Arizona Court of Appeals ruled that a felony conviction failed to constitute a prerequisite to the application of the felony exclusion because "any court may make the requisite determination." *Id.* at 130, 993 P.2d at 1094. This holding, the State argues, must be applied to the exact same language used in A.R.S § 12–820.05(B).

Because Arizona courts have not yet had the opportunity to clarify the application of A.R.S. § 12–820.05(B) to circumstances like those presented by this case, the Court must "make a reasonable determination of the results the highest state court would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, n. 7 (9th Cir.2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir.1993)). The Court "must use [its] best judgment to predict how that court would decide it." *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir.1997) (quoting *Allen v. City of Los Angeles*, 92 F.3d 842, 847 (9th Cir.1996)).

Here, Plaintiff admits that she alleges Scott committed a felonious act. (Re-sponse p.11) (Doc. # 5). Plaintiff offers no valid reason to anticipate that the Arizona Court of Appeals' interpretation of A.R.S. § 41–621(L)(1) would fail to apply to the identical language in A.R.S. § 12–820.05(B). Both statutes serve a similar purpose, protecting public entities from liability for the felonious actions of their employees absent knowledge of the employee's propensity for felonious action. Therefore, the Court finds that the Arizona Supreme Court would follow the reasoning of Judge Fidel, and allow A.R.S. § 12–820.05(B) to apply despite the lack of a prior criminal court finding that Scott's action constituted a felony.

Having determined A.R.S. § 12–820.05(B) applicable, the Court now must determine if the limited exception to this immunity for a known "propensity for that action" applies. Again, no Arizona cases address this question of statutory interpretation. Therefore, the Court must make a reasonable prediction of how the Arizona Supreme Court would likely rule. *Kona Enters., Inc.*, 229 F.3d at 885 n.7.

Again, Judge Fidel's *Heinze* opinion proves helpful. In that case, the court determined that A.R.S. § 41–621(L)(1)'s felony exclusion failed to provide immunity to the State as a matter of law. Enough evidence existed, despite no prior felonies by the State's employee, to allow a jury to find that if the State was "aware of the work environment *Heinze* created, it should have anticipated even the final [felonies of rape and sexual assault] with which *Heinze* is charged in these cases." *Heinze*, 196 Ariz. at 131, 993 P.2d at 1095 (quoting *State v. Schallock*, 189 *Ariz.* 250, 258, 941 P.2d 1275, 1283). The evidence that the court believed raised a question of

---

7. A.R.S. § 41–621(L)(1) provides for no coverage for losses that "arise out of and are directly attributable to an act or omission determined by a court to be a felony by a person who is provided coverage pursuant to this article unless the state knew of that person's propensity for that action . . . ."

fact over the State's ability to deduce a propensity to commit felonious acts consisted of a decade of "egregious improprieties." *Schallock,* 189 Ariz. at *258,* 941 P.2d at 1283. These improprieties included often making "off-color comments, vulgar gestures, and sexual jokes, and inappropriately touch[ing] the women in the office." *Id.* at 252, 941 P.2d at 1276.

In this case, as with *Heinze,* Plaintiff fails to allege any prior felonies committed by Scott. Instead, she argues that Scott's "known propensity for losing his temper" exists based on "his prior acts of misconduct in the U.S. Marines, with the Colorado State Patrol, and with the Arizona [DPS]." (Response p.11) (Doc. # 5).

Defendant argues that the Complaint fails to specifically allege any propensity for losing temper, only making vague references to numerous other "incidents" and "one other complaint for using excessive force." (Reply p.2) (Doc. # 6) (quoting Complaint). Taken together, Defendant maintains, these allegations cannot establish a propensity because they fail to include any allegations of "Scott actually [using] excessive force in any previous context, nor ... [using] excessive force in arrests." *Id.* at pp.2–3.

Applying the rationale in *Heinze,* the Court finds Plaintiffs Complaint sufficiently alleges Scott's propensity for using excessive force and/or committing felonious assault. .While, Plaintiff neither explicitly alleges Scott's propensity to commit felonious acts nor the State's knowledge of this propensity, the Court also looks to see if Plaintiff alleges enough facts to implicitly establish Scott's propensity and the State's knowledge. While Plaintiff need not allege prior felonies by Scott to establish a propensity, he must allege enough facts to establish that the work environment Scott

created allowed the State to anticipate an eventual assault. Plaintiff offers two allegations to establish Scott's propensity.

First, Plaintiff alleges that Scott admitted to "numerous other incidents" that resulted in counseling and reprimand. (Complaint ¶ 22) (Doc. # 1). Next, Plaintiff alleges a prior complaint for using "excessive force." Read in the light most favorable to Plaintiff, her alleged facts sufficiently establish the work environment Scott created allowed the State to anticipate an eventual assault. Therefore, State and State Defendants' Motion to Dismiss is partially denied as to Count Three, assault and battery.

Plaintiff also requests leave to amend within ten days following notice of the Court's ruling on the Motion to Dismiss if the Court finds "no valid claim is stated ...." (Response p.13) (Doc. # 5). However, as previously explained, the Court finds the § 1983 claim and assault and battery claim both sufficiently alleged. Therefore, Plaintiffs Motion to Amend is unnecessary.

**(b) Notice of Claim Requirement Pursuant to A.R.S. § 12–821.01(A)**

Finally, State Defendants argue for dismissal of Plaintiffs state law cause of action for negligent hiring, training, retaining, and supervision.[8] A.R.S. § 12–821.01 requires, as a prerequisite to filing a claim against a public entity or public employee, that a Notice of Claim be timely filed within 180 days after the cause of action accrued "with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure..." A.R.S. § 12–821.01(A).

---

**8.** The State does not make this argument, admitting that "Plaintiff provided a notice of claim to the State by sending notice to the Office of the Attorney General and the Arizona Department of Administration...." (Motion p.3) (Doc. # 4).

Courts interpret a statute with the goal of giving effect to the legislative intent underlying it. When determining legislative intent, courts consider the "statute's context, its language, its effects and consequences, and its spirit and purpose". *Andress v. City of Chandler*, 198 Ariz. 112, 114, 7 P.3d 121, 123 (2000). Arizona courts already hold that A.R.S. § 12–821.01 exists "to allow the public employee and his employer to investigate and assess their liability, to permit the possibility of settlement prior to litigation and to assist the public entity in financial planning and budgeting." *Crum*, 186 Ariz. at 352, 922 P.2d at 317.

If the claimant asserts a claim against a public entity and a public employee, the claimant must give notice to both the public entity and the public employee. *Crum v. Superior Court*, 186 Ariz. 351, 352, 922 P.2d 316, 317 (Ariz.App.1996). Providing notice to a governmental agency fails to suffice to give notice to the individual employee. *Johnson v. Superior Court*, 158 Ariz. 507, 509, 763 P.2d 1382, 1384 (Ariz. App.1988). Any claim that fails to comply with the notice of claim statute is barred. A.R.S. § 12–821.01(A).

■ However, A.R.S. § 12–821.01(A)'s requirement for filing a Notice of Claim constitutes a "procedural rather than a jurisdictional requirement and, 'like a statute of limitations, this procedural requirement is subject to waiver, estoppel and equitable tolling.'" *Young v. City of Scottsdale*, 193 Ariz. 110, 113, 970 P.2d 942, 945 (Ct.App.1998) (quoting *Pritchard v. State*, 163 Ariz. 427, 432, 788 P.2d 1178, 1183 (1990)).

Here, Plaintiff served a Notice of Claim by hand-delivery to the Arizona Attorney General's Office on December 31,2001. At that time, the State employee working at the receptionist desk signed a form indicating she possessed authority to accept the Notice of Claim on behalf of the State,

Scott, and the State Defendants. (Response Exhibit B) (Doc. # 5). The attorney for the State received a copy of this Notice of Claim. This same attorney represents all of the State Defendants.

Plaintiff argues that she either effected service pursuant to (1) Ariz. R. Civ. P. 4.1(d) by serving an actual or apparent agent of State Defendants; or (2) Ariz. R. Civ. P. 4.1(m) by other means. State Defendants maintain Plaintiffs claim must be dismissed because (1) no actual or apparent agency existed between them and the State employee who signed Plaintiffs form; and (2) Ariz. R. Civ. P. 4.1(m) requires the Plaintiff to obtain a court order prior to effecting service.

Both Plaintiff and State Defendants have filed numerous documents whose content was neither alleged in the Complaint nor relied on by Plaintiff to file her Complaint. *See, e.g.*, Motion, Exhibits A–E (Doc. # 4); Response, Exhibit C (Doc. # 5).

Under the Rules, when matters outside the pleadings are presented, a Rule 12(b)(6) motion to dismiss may be denied with leave to file a motion for summary judgment This way, all the parties will be given a reasonable opportunity to present all pertinent material. Fed.R.Civ.P. 12(b). Therefore, the Court will deny without prejudice the portion of State and State Defendants' Motion to Dismiss relating to Count Four, negligent hiring, training, retaining, and supervision, and grant leave to file a Summary Judgment Motion on this issue.

**B. Scott's Motion to Dismiss**

Scott filed a separate Motion to Dismiss that argues for dismissal of the assault and battery claim against him. (Doc. # 7). Scott makes the same failure to serve a Notice of Claim argument as State Defendants. *See supra*, Part II(A)(2)(b).

Again, both parties file numerous documents whose content was neither alleged in the Complaint nor relied on by Plaintiff to file her Complaint. *See, e.g.,* Response Exhibits, A–C (Doc. # 8); Reply Exhibits, 1–2(Doc. # 10). Therefore, the Court will deny without prejudice Scott's Motion to Dismiss and grant leave to file a Summary Judgment Motion on this issue.

Accordingly,

**IT IS THEREFORE ORDERED** that State and State Defendants' Motion to Dismiss (Doc. # 4–1) is **GRANTED** in part and **DENIED** in part. Plaintiffs official capacity § 1983 claims against State Defendants are dismissed.

**IT IS FURTHER ORDERED** that (1) Scott's Motion to Dismiss (Doc. # 7) and (2) State and State Defendants' Motion to Dismiss (Doc. # 4–1) as related to Count Four, negligent hiring, training, retaining, and supervision are **DENIED** without prejudice and leave is granted to file Summary Judgment Motions on this issue. The parties shall file Summary Judgement Motions pursuant to Fed.R.Civ.P. 56 and Local Rule 1.10(1) by April 15,2003. Plaintiff shall have thirty (30) days after service within which to serve md file responses. The moving parties shall have fifteen (15) days after service of their respective responses to reply.

**IT IS FURTHER ORDERED** that State and State Defendants' Motion for More Definite Statement (Doc. # 4–2) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Amend (Doc. # 5–2) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs Motion to Strike (Doc. # 5–1) is **DENIED** as moot.