Dale **GORNEY**, Plaintiff,

v.

**ARIZONA BOARD OF REGENTS, et al.,** Defendants.

No. CV–13–00023–TUC–CKJ.

United States District Court, D. Arizona.

Signed Sept. 3, 2014.

Dale Gorney, Tucson, AZ, pro se.

Rebecca Jane Herbst, Office of the Attorney General, Phoenix, AZ, for Defendants.

## ORDER

CINDY K. JORGENSON, District Judge.

Plaintiff Dale Gorney, who is proceeding pro se, filed this case alleging that he was wrongfully terminated from his employment at the Uni filed a Motion to Dismiss the FAC, and Plaintiff opposed. (Docs. 33, 34.) Magistrate Judge Charles P. Pyle issued a Report and Recommendation (R & R) recommending that the Motion to Dismiss be granted. (Doc. 38.) Plaintiff filed objections to the R & R, and Defendants have filed a response. (Doc. 39, 40.)

The Court will overrule Plaintiff's objections, adopt the R & R, grant the Motion to Dismiss, and terminate the action.

## I. Governing Standard

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir.1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D.Or. 1998).

## II. Procedural Background

Plaintiff filed his action in state court, and Defendants removed the case to the federal district court. Defendants moved to dismiss, and this Court dismissed the complaint with leave to amend. (Doc. 25.) On October 23, 2013, Plaintiff filed his FAC. (Doc. 32.) Plaintiff alleges that he was wrongly terminated from his employment at the University of Arizona (UA) after he made three "disclosures" of wrongful employee conduct and asserted rights under the Arizona Board of Regents whistleblower policy (ABOR Policy 6–914). He names as Defendants the Arizona Board of Regents; Steve Husman, Director of the UA Tucson Area Agricultural Center; Jacqueline Lee Mok, UA Senior Vice President and Chief of Staff, Office of the President; Thomas P. Miller, UA Associate Provost of Faculty Affairs; and Allison Vaillancourt, UA Vice President, Human Resources. (FAC ¶ 11.) Plaintiff asserts claims for (1) wrongful termination in violation of public policy; (2) violation of 42 U.S.C. § 1983; (3) retaliation under the Fair Labor Standards Act (FLSA); (4) breach of implied-in-law covenant of good faith and fair dealing; and (5) tortious interference with contract. He seeks reinstatement of employment; an employment contract; backpay; reimbursement for money spent and early withdrawals from

his IRA due to his termination; general damages for emotional distress caused from stress due to financial repercussions of his termination; and punitive damages. (FAC ¶¶ 29–32.)

Defendants move to dismiss the FAC, arguing, among other things, that Plaintiff failed to appeal from the University's decision discharging him from employment by filing an action in Superior Court under the Administrative Review Act, Ariz.Rev. Stat. § 12–901 et seq., and that this failure precludes him from filing the claims raised in the FAC. (Doc. 33.)

### III. Factual Allegations

Plaintiff does not object to the factual allegations as stated in the R & R, and the Court adopts them. Briefly, the facts show that between March 18 and April 26, 2011, Plaintiff filed a series of complaints (disclosures) regarding his supervisor and several Defendants. He was advised that the matters did not rise to the level of matters of public concern, and he was told to meet with appropriate supervisors.[1]

Plaintiff claimed overtime incurred in drafting the disclosures. (FAC ¶¶ 10.18, 23.1.) Defendant Husman, Plaintiff's supervisor, "required [Plaintiff] on more than one occasion to meet personally with him to discuss overtime and extra work hours … related to the disclosure(s)." (FAC ¶ 23.2). Plaintiff claimed the disclosures were confidential and refused to meet with Defendant Husman. (FAC ¶ 23.2) Plain-

tiff was given a Written Warning, placed on Disciplinary Probation, and given a pre-discharge notice for his repeated refusal to meet with Defendant Husman to discuss his overtime claims. (Id.; see also FAC ¶ 8 (Plaintiff refused to meet with Defendant Husman while on disciplinary probation).) Plaintiff also refused to meet with Defendant Husman for the disciplinary probation and pre-discharge meetings, because Plaintiff claimed that such "directives to meet with him were illegal." (FAC ¶ 23.4.) On May 25, 2011, Defendant Husman terminated Plaintiff for cause. (FAC ¶ 24.2.)

Plaintiff requested a post-termination hearing under University Policy 406.0. (FAC ¶ 24.2.) A hearing was held on May 15, 2012, and on June 22, 2012, the review panel issued the Hearing Decision upholding Plaintiff's termination. (FAC ¶ 25; see also Doc. 33, Ex. B.) On July 13, 2012, Defendant Mok accepted the panel's recommendation denying Plaintiff's appeal. (FAC ¶ 25.1; see also Doc. 33, Ex. C.) Plaintiff requested reconsideration of the decision, and on July 26, 2012, Defendant Mok affirmed her decision. (FAC ¶ 25.3; see also Doc. 33, Ex. D.) In her letter denying the request for reconsideration, Defendant Mok advised that Plaintiff had the right to appeal her decision to the Superior Court pursuant to A.R.S. § 12–901, Arizona's Administrative Review Act, and that such appeal must be filed within 35 days from the date on which Plaintiff was served with the decision denying his

---

1. For example, Defendant Miller informed Plaintiff that under ABOR Policy 6–914, Plaintiff "must first make a good faith disclosure of alleged wrongful conduct to a public body or to a designated University officer on a *'matter of public concern.'* The subject of such a disclosure must go beyond personal grievances and internal policies of the University; must fairly relate to a matter of political, social or other concern to the community, rather than merely to the individual who

makes the statement; and must be helpful to the community in evaluating the performance of public institutions." (FAC, Ex. 5 (April 18, 2011 Letter)) (emphasis in original.) Defendant Miller wrote Plaintiff that he did "not find the allegations that you have made—that your supervisor refuses to provide work schedules of other employees to you—to rise to the level of a [sic] 'a matter of public concern.' " (Id.).

request for reconsideration. (Doc. 33, Ex. D.)

It is undisputed that Plaintiff did not seek an appeal pursuant A.R.S. § 12–901. Instead, he filed a separate complaint in state court which Defendants removed to this Court.

## IV. Analysis

### A. Preclusion and the Eleventh Amendment

Magistrate Judge Pyle concluded that because Plaintiff failed to file an appeal with the state superior court pursuant to the state's Administrative Review Act, Ariz.Rev.Stat. § 12–901 *et seq.*, within 35 days of receipt of Mok's decision denying reconsideration, Plaintiff is precluded from bringing his claims for wrongful termination, under both state-law and § 1983; his claim for FLSA overtime, and his claim for breach of the implied covenant of good faith and fair dealing. (Doc. 38 at 961–64.) Plaintiff objects to the R & R, arguing that claim preclusion does not apply to his claims and that the Bd. of Regents waived its Eleventh Amendment immunity when it removed the case to federal court. (Doc. 39 at 2.)

First, Plaintiff relies on *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 403, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), asserting that there are cases in which res judicata must give way "to what the Court of Appeals referred to as 'overriding concerns of public policy and simple justice.'" (Blackmun, J., concurring in the judgment.) But in *Federated Dept. Stores, Inc.*, the Supreme Court reversed the determination of the Ninth Circuit Court of Appeals, which had refused to apply res judicata. The concurrence cited by Plaintiff noted that this case was "clearly not one in which equity requires that the doctrine give way. Unlike the nonappealing party in *Reed [v. Allen*, 286 U.S. 191, 209,

52 S.Ct. 532, 76 L.Ed. 1054 (1932)], respondents were not 'caught in a mesh of procedural complexities.'" (Cardozo, J., joined by Brandeis and Stone, JJ., dissenting) ("A system of procedure is perverted from its proper function when it multiplies impediments to justice without the warrant of clear necessity.") In fact, the Court in *Federated Dept. Stores, Inc.*, recognized the public policy considerations in applying principles of res judicata:

> The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata." (Internal citation omitted.) The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties."

452 U.S. at 401, 101 S.Ct. 2424.

■ Plaintiff further argues 28 U.S.C. § "1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged" but that here there has been no state court judgment because Defendants removed the case. (Doc. 39 at 3–4, citing *Migra v. Warren City Sch. District Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).) He concludes that Article VI of the Constitution contains authority for the Court to apply *Lapides v. Bd. of Regents of Univ. System of Ga.*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), which held

that a State's act of removing a lawsuit from state court to federal court waives its Eleventh Amendment immunity from state-based claims. But in *Embury v. King,* the Ninth Circuit noted that its holding extending *Lapides* to federal claims did not apply to cases where Congress acted beyond its power over the States and had not validly abrogated the State's immunity through the Fourteenth Amendment. *Embury v. King,* 361 F.3d 562, 566, n. 20 (9th Cir.2004). As this Court has previously held, because Congress has not validly abrogated the States' sovereign immunity on FLSA claims, *see Alden v. Maine,* 527 U.S. 706, 712, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), the Board did not waive its immunity on Plaintiff's FLSA claim by removing this action to federal court. (*See* Doc. 25 at 6.)

In addition, to the extent that Plaintiff is arguing that by removing the case to federal court Defendants waived their preclusion defense the Court disagrees. Plaintiff cites no authority for this argument. *Lapides,* on which Plaintiff apparently relies, addresses waiver of Eleventh Amendment immunity, not waiver of all defenses. As the Supreme Court noted, its holding is limited "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." 535 U.S. at 617, 122 S.Ct. 1640. The Court overrules the objection.

Here, Plaintiff identifies nothing that would justify rejection of issue preclusion/res judicata in this case.

**B. Full and Fair Opportunity to Litigate the Issues**

Plaintiff also argues that he did not have a full and fair opportunity to litigate his claims because (1) as previously found by

this Court, he filed suit well before the one year statute of limitations and the Administrative Review Act allows only 35 days to file suit and (2) he would not have access to the Arizona Appellate Courts because under the Administrative Review Act, he would have to go straight to the Arizona Supreme court for his appeal.[2] (Doc. 39 at 4–5.) He claims that "the issue is not claim preclusion regarding a state board acting in a judicial capacity but one of validity (what is a lawsuit) and the statute of limitations." (*Id.* at 5.) He argues that the Administrative Review Act is "out of step" with Arizona's Rules of Civil Procedure and Appellate Procedure. (*Id.* at 5–6.) He objects to the Magistrate Judge's application of *United States v. Utah Constr. & Mining Co.,* which Plaintiff argues applied to government contracts and dispute clauses. (*Id.* at 5.) Plaintiff does not dispute the R & R finding that the Arizona Board of Regents is an agency subject to the state's Administrative Review Act. (*See* Doc. 38 at 959–60.)

The R & R notes that "[w]hen a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties have had an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect to which it would be entitled in that state's courts." (Doc. 38 at 960, citing *Olson v. Morris,* 188 F.3d 1083, 1086 (9th Cir.1999) (citing *University of Tennessee v. Elliott,* 478 U.S. 788, 798–99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)).) Plaintiff argues that *Olson* states that courts "have denied preclusive effect to administrative agency determinations where the plaintiff was denied an adequate opportunity to litigate issues regardless of

**2.** Defendants filed a Motion to Dismiss the original complaint, arguing that the complaint was not filed within the one-year stat-

ute of limitations. (Doc. 3.) The Court applied equitable tolling and held that the complaint was timely filed. (Doc. 25 at 10.)

whether the state court would have done so." (Doc. 39 at 7, quoting *Olson*, 188 F.3d at 1086, citing *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1283–84 (9th Cir.1986).)

But in *Olson*, the Court found that claim preclusion was appropriate, including for the plaintiff's First Amendment claim, because the procedures at the administrative hearing comported with the requirements of *Utah Construction*. 188 F.3d at 1086. Specifically, Olson had contested the revocation of his psychologist's license; the revocation was based on his performance of an exorcism. The civil rights action asserted that revocation of his license violated his First Amendment religious freedoms. The Court of Appeals found that at the administrative proceedings the issue was whether Olson had engaged in unprofessional conduct in the course of providing psychological evaluation and treatment; it was undisputed he knew he was entitled to representation by counsel; and he presented a largely factual defense at the hearing, offering evidence that the psychological services he rendered were an appropriate "modality" under the circumstances of the case. The appeals court noted Olsen specifically asserted before the Board his right to freedom of religion under the First Amendment. *Id.* at 1087.

And *Mack*, where the court found no adequate opportunity to litigate an age-discrimination claim at the administrative level, is distinguishable from Plaintiff's case. In *Mack*, a discharged employee had been denied unemployment benefits and later brought an action for age discrimination. The Ninth Circuit held that because of the nature of the proceedings, there was no adequate opportunity to litigate the plaintiff's age-discrimination claims before the Unemployment Insurance Appeals Board, noting that the Ad-

ministrative Law Judge made no specific findings concerning the plaintiff's age-discrimination claim and the record did not disclose whether evidence was ever presented on the issue. *Mack*, 798 F.2d at 1283–84.

 To apply claim preclusion, the district court must independently assess the adequacy of the state's administrative forum and determine whether it was conducted with sufficient safeguards to be equated with a state court judgment. *Olson*, 188 F.3d at 1086 (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 798–99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir.1988)). In addition, *Utah Construction* requires that: (1) the administrative agency act in a judicial capacity; (2) that the agency resolve disputed issues of fact properly before it; and (3) the parties have an adequate opportunity to litigate. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

Plaintiff does not object to the findings of fact set forth in the R & R as to the procedures at the hearing. The Magistrate Judge found that

> [Plaintiff] admitted 44 exhibits into evidence, made an opening statement, examined and cross-examined witnesses, called no witnesses but testified in his own behalf, and made a closing argument to the panel. (*Id.*). The panel and Hearing Officer issued a Hearing Report setting forth: a Hearing Summary; a Statement of the University Disciplinary Action Policy; Background of the Dispute; Findings of Fact; Conclusions; and Panel Recommendations. (*Id.*) The Hearing Decision also reflects that Gorney requested: "many forms of compensation and relief from the University, including reinstatement, back pay to June 1, 2011 with interest thereon, a

written employment contract, liquidated damages under the Fair Labor Standards Act and compensation for penalties associated with early withdrawal of retirement funds." 2 (*Id.* at p. 4). After the Hearing Decision issued Gorney was permitted to request reconsideration of the decision (Defendants' Motion, Exh. C), which he did, and which was denied. (Motion, Exh. D).

(Doc. 38 at 960.) The Court adopts these findings. The Magistrate Judge also found that Plaintiff "was informed of his right to file an appeal with the state superior court pursuant to Arizona's Administrative Review Act, A.R.S. § 12–901 *et seq.*, within 35 days from receipt of Defendant Mok's decision denying his request for reconsideration, (*see* Defendants' Motion, Exh. D)" and did not do so. (*Id.*) The Court adopts this finding.

The R & R also concluded that the procedures met the criteria in *Utah Construction.* (*Id.*) Plaintiff objects to this conclusion; as noted he objects on the grounds of the statute of limitations, the lack of available review by Arizona's Court of Appeals, and, apparently, that an appeal under the Administrative Procedure Act is not a "lawsuit" or "civil action" within the meaning of the Arizona Civil Procedure Act. The Court overrules these objections. Plaintiff does not actually object that he had an inadequate opportunity to litigate his issues at the administrative hearing.

■ First, the jurisprudence on the preclusive effect of state agency fact-finding and legal determinations clearly contemplates the use of state-agency procedures that are not identical to procedures used in civil lawsuits in the state courts. That is why the district court is to determine the adequacy of the opportunity to litigate the issues at the administrative hearing. There is no requirement that administrative procedures or review be identical to state-court procedures. Plaintiff fails to explain why the shorter statute of limitations or the lack of appellate-court review denied him an adequate opportunity to litigate his issues at the administrative hearing.[3]

The Court also overrules Plaintiff's objections as to the propriety of the Administrative Review Act. As Defendants note, the Arizona Court of Appeals held that an unclassified employee who believes he was terminated for whistleblowing "may file *either* a wrongful discharge action or an administrative complaint." (Doc. 40 at 4–5, citing *Walters v. Maricopa County,* 195 Ariz. 476, 481, 990 P.2d 677, 682 (App.1999) (emphasis added).) If such an employee wants to forego the expeditious route of an administrative review, he may file directly with the court. *Id.* But an employee may not file an administrative complaint, appeal the administrative decision, and file a wrongful termination action, which would be a prohibited collateral attack of the administrative decision. *See Mullenaux v. Graham County,* 207 Ariz. 1, 7, 82 P.3d 362, 368 (App.2004) and *Guertin v. Pinal County,* 178 Ariz. 610, 612, 875 P.2d 843, 845 (App.1994). Moreover, the statutory language makes clear that an appeal of an administrative determination to the superior court is an "action"; the Administrative Procedure Act consistently refers to "an

---

**3.** The Court notes that the shorter statute of limitation is appropriate because the issues have been identified by the administrative procedure and record and the action to review will review the existing administrative record. Ariz.Rev.Stat. § 12–904 A, B. In addition, the decision, order, judgment or decree of the superior court is reviewable by the Arizona Supreme Court; therefore appellate review is available. *Id.* § 12–913. The review is de novo. *See Carlson v. Ariz. State Personnel Bd.,* 214 Ariz. 426, 153 P.3d 1055 (App.Div. 1 2007).

action" to review a final administrative decision. Ariz.Rev.Stat. §§ 12–903A, 904A, 905B, 906, 908.

As to Plaintiff's claim for wrongful termination, the hearing Decision finds that supervisory employees did not provide advance authorization for Plaintiff's overtime work; Plaintiff repeatedly refused to meet with his supervisors and, contrary to Plaintiff's claim, the information sought by his supervisor was not confidential for purposes of the UA's whistleblower protection policy; the meeting requests were reasonably necessary to direct the work force; and Plaintiff was insubordinate in repeatedly failing to comply with reasonable instructions and directives. (Doc. 33, Ex. B.) The determination of sufficient grounds to terminate Plaintiff is sufficiently established. Other than the statute of limitations and state-court arguments, which the Court rejects, Plaintiff does not claim that he had an inadequate opportunity to litigate this issue at the administrative proceeding. Plaintiff is precluded from bringing a claim for wrongful termination.

Plaintiff's § 1983 claim relies on the same facts as his wrongful termination claim. Specifically, he alleges that Mok, Miller, Husman, and Vaillancourt violated his First Amendment and the Fourteenth Amendment rights. (FAC ¶ 11.) He claims that his disclosures fell within the whistleblower policy and statute and that Defendants retaliated against him and violated his constitutional rights by, *inter alia*, not following ABOR Policy 6–914, by failing to authorize overtime, and by terminating his employment. He asserts that in retaliation for filing his complaint with the Department of Labor regarding overtime violations, Vaillancourt delayed the his post-termination review hearing six months and failed to inform him he was eligible for re-employment with the UA.

(FAC ¶¶ 24.3–23.4). Plaintiff further claims that Mok violated his constitutional rights by "collaborating" with the hearing review panel, denying him access to ABOR Policy 6–914, condoning Vaillancourt's delay of the post-termination review hearing, and denying the for reconsideration.

Plaintiff does not object to the Magistrate Judge's finding that these issues could have been brought before the hearing panel or on appeal to the state court. Thus, the Court adopts the R & R as to these matters and holds that his failure to appeal precludes the claims under § 1983.

Regarding the FLSA claim, Plaintiff asserts that Defendants' violation of ABOR Policy 9–614, in failing to accord his disclosures whistleblower protection, in turn, resulted in retaliation against him in violation of the FLSA. (FAC ¶¶ 26.1–26.5.) He argues that the Board waived Eleventh Amendment immunity when it removed the case to federal court; the Court has already rejected this argument. Moreover, the FLSA issue was raised at the administrative hearing, he requested damages, and findings were made regarding the claim for overtime. Plaintiff could have raised his claim on appeal to the state court pursuant to the Administrative Review Act, but he did not, and does not object to the findings. The Court adopts the R & R as to the FSLA claim. Plaintiff is precluded from raising this claim in a separate suit.

Plaintiff raises a claim for breach of the implied-in-law covenant of good faith and fair dealing. This Court has already held that Arizona does not recognize such; a claim "in Arizona, a tortious [ ]bad faith[ ] cause of action arising out of a breach of employment agreement, when no public policy is violated, is prohibited." (Doc. 25 at 15.) Moreover, the Hearing Decision found sufficient grounds to terminate Plaintiff's employment. Because he did

not properly appeal the decision, he is precluded from raising the claim in a separate lawsuit. The Court adopts the R & R as to this claim.

Finally, Plaintiff claims tortious interference with a contractual relationship, alleging that Mok, Miller, Vaillancourt, and Husman acted outside the scope of their authority to tortiously interfere with his contractual employment relationship with the University and that they "collaborat[ed] with each other by refusing [him] access to policy 6–914 and condoning [his] unlawful termination from employment." (FAC ¶ 28.) The District Court previously dismissed this claim because "the Defendants are all employees of the University and according to the Complaint were acting within the scope of their authority in assessing Plaintiff's disclosures, Defendants cannot be liable for interfering with Plaintiff's contractual relationship. (Doc. 25 at 16.) In the R & R, the Magistrate Judge found that although Plaintiff now claims that they acted outside the scope of their authority by violating University policies and state and federal law, Plaintiff failed to allege facts showing that Defendants were not acting as university employees at the relevant times. Plaintiff does not object to this finding. Moreover, as noted, the Hearing Decision established sufficient grounds for termination. The Court adopts the R & R as to this claim.

### C. Unclean Hands

Plaintiff argues that even if issue preclusion applies to other claims, it should not apply to his first claim for wrongful termination. (Doc. 39 at 11–13.) He asserts generally that the Bd. of Regents has unclean hands because it knew or should have known that Plaintiff's disclosures were legitimate under the UA policy. But the question for claim preclusion is whether Plaintiff had an adequate opportunity to litigate these matters at the administrative hearing, and he offers nothing to show that he did not. Moreover, the arguments he makes now could have been raised on appeal from the administrative decision.

Having reviewed the pleadings and considering Plaintiff's arguments, the Court finds that Plaintiff had an adequate opportunity to present evidence at the administrative hearing, the agency resolved issues of fact properly before it, and the findings of fact and conclusions of law relate to the issues raised in the present lawsuit. Plaintiff did not file an action in state court to appeal the administrative decision. Therefore, Plaintiff is precluded from bringing the present ⸱action. Because amending the complaint would be futile, the Court will grant the Motion to Dismiss without leave to amend.

Accordingly,

**IT IS ORDERED:**

(1) The Report and Recommendation (Doc. 38) is **adopted.**

(2) Defendants' Motion to Dismiss (Doc. 33) is **granted,** and the claims in the First Amended Complaint are **dismissed with prejudice,** without leave to amend the First Amended Complaint.

(3) The case is terminated, and the Clerk of Court is directed to enter judgment accordingly.

### REPORT & RECOMMENDATION

CHARLES R. PYLE, United States Magistrate Judge.

Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint (Doc. 33). Plaintiff has filed a Response (Doc. 34) and Defendants have filed a Reply (Doc. 37). For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendants' Motion.

### FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Gorney, who is proceeding *pro se*, alleges that he was wrongly terminated from his employment at the University of Arizona ("UA") after he made three "disclosures" of wrongful employee conduct and asserted rights under the Arizona Board of Regents whistleblower policy ("ABOR Policy 6–914"). Gorney originally filed this action in state court and Defendants filed a notice of removal. Thereafter, upon Defendant's motion for dismissal, the District Court dismissed Gorney's original complaint with leave to amend. (Doc. 25). On October 23, 2013, Gorney filed his First Amended Complaint ("FAC") (Doc. 32). Gorney names as Defendants: the Arizona Board of Regents; Steve Husman, Director of the UA Tucson Area Agricultural Center; Jacqueline Lee Mok, UA Senior Vice President and Chief of Staff, Office of the President; Thomas P. Miller, UA Associate Provost of Faculty Affairs; and Allison Vaillancourt, UA Vice President, Human Resources. (FAC, p. 6 & 1 ¶ 11). Gorney raises the following claims: (1) wrongful termination in violation of public policy; (2) violation of 42 U.S.C. § 1983; (3) retaliation under the Fair Labor Standards Act ("FLSA"); (4) breach of implied-in-law covenant of good faith and fair dealing; and (5) tortious interference with contract. Gorney requests reinstatement of employment; an employment contract; backpay; reimbursement for money spent and early withdrawals from his IRA due to his termination; general damages for emotional distress caused from stress due to financial repercussions of his termination; and punitive damages. (FAC, ¶¶ 29–32).

Defendants seek dismissal of Gorney's FAC for failure to state a claim, arguing among other things, that Gorney's failure to appeal from the University's decision discharging him from employment by filing an action in Superior Court under the Arizona Administrative Review Act, A.R.S. § 12–901 *et seq.*, precludes him from filing the claims raised in the FAC.

### STANDARD

To defeat a motion to dismiss, the "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009). The " 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Telesaurus VPC, LLC. v. Power*, 623 F.3d 998, 1003 (9th Cir.2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint ..." does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Usually, the court may not look be beyond the plaintiff's complaint in resolving a motion to dismiss. However, the court may consider documents attached to the complaint as well as "any documents referred to or 'whose contents are alleged in a complaint and whose authenticity no party questions.' " *McGrath v. Scott*, 250 F.Supp.2d 1218, 1221 (D.Ariz.2003). (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002)); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Moreover, " 'even if the plaintiff[']s complaint does not explicitly refer to' a document, 'a district court ruling on a motion to dismiss may consider a document the authenticity of which is not

contested, and upon which the plaintiff[']s complaint necessarily relies' because this prevents 'plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]'" *McGrath*, 250 F.Supp.2d at 1221 (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998), *superseded on other grounds by* 28 U.S.C. § 1453(b)). Gorney has attached various documents to his FAC, which the Court may properly consider on a motion to dismiss. *See Ritchie*, 342 F.3d at 908. Additionally, Defendants have attached the following documents to their Response: Staff Dispute Resolution Procedure, Policy 406.0 (Response, Exh. A); June 22, 2012 Hearing Report ("Hearing Decision") (Response, Exh. B); July 13, 2012 Letter from Defendant Mok accepting the Hearing Decision recommendations (Response, Exh. C); and July 26, 2012 denial of Gorney's request for reconsideration (Response, Exh. D). Gorney alleges that he was wrongfully terminated and retaliated against. Gorney also alleges that he had a post-termination review hearing and that Defendant Mok violated his constitutional rights by accepting the Hearing Decision and denying his request for reconsideration. (*See e.g.* FAC, ¶¶ 23.4, 25.1–25.3). The allegations in Gorney's FAC necessarily rely on the Hearing Decision and stated reasons for his termination. Further, neither party has contested the authenticity of the documents submitted. The documents are properly considered in resolving Defendants' Motion to Dismiss.

## DISCUSSION

**GENERAL FACTUAL ALLEGATIONS.** On March 18, 2011, Gorney complained that his supervisor would not share co-workers' schedules with him and was retaliating against him in scheduling because Gorney had complained that a co-worker had not been working a full 40-hour week despite being been paid to do so. (*See* FAC, Exh. 5 (April 18, 2011 Letter)); (*see also* FAC 116). Defendant Miller informed Gorney that his complaint did not rise to the level of a matter of public concern under ABOR Policy 6–914.[1] (FAC, Exh. 5 (April 18, 2011 Letter)). Defendant Miller advised that Gorney should bring his concerns regarding improprieties related to staff members in his department to an appropriate supervisor. (*Id.*). Defendant Miller also noted: "It appears that you have refused to meet with your supervisor and that you also have been unwilling to share your concerns with members of Human Resources who have demonstrated a willingness to assist you." (*Id.*)

On April 17, 2011, Gorney complained that Defendant Husman violated the FLSA by denying Gorney overtime pay. (FAC, 116; FAC, Exh. 5 (April 24, 2011 Letter)). Again, Defendant Miller informed Gorney that the matter did not rise to a matter of public concern: "Although you have raised concerns about your own employment and decisions related to your own employment, these concerns are personal to you, and do not constitute matters of public concern as contemplated by state

---

1. Defendant Miller informed Gorney that under ABOR Policy 6–914, Gorney "must first make a good faith disclosure of alleged wrongful conduct to a public body or to a designated University officer on a '*matter of public concern.*' The subject of such a disclosure must go beyond personal grievances and internal policies of the University; must fairly relate to a matter of political, social or other concern to the community, rather than mere-

ly to the individual who makes the statement; and must be helpful to the community in evaluating the performance of public institutions." (FAC, Exh. 5 (April 18, 2011 Letter)) (emphasis in original). Defendant Miller wrote Gorney that he did "not find the allegations that you have made—that your supervisor refuses to provide work schedules of other employees to you—to rise to the level of a [sic] 'a matter of public concern.'" (*Id.*).

law and the ABOR Whistleblower policy...." (FAC, Exh. 5 (April 24, 2011 Letter)). Defendant Miller advised Gorney to direct his complaints and concerns to his supervisors or their supervisors under applicable employee policies. (*Id.*). He also advised that "just because you have lodged complaints with University officials, you are not excused from dealing with your supervisors and responding to reasonable requests by them to meet to discuss either your concerns or theirs." (*Id.*).

On April 26, 2011, Gorney alleged that UA employees, including Defendants Husman and Nelson, were using university facilities to repair their personal vehicles. (FAC, ¶16; FAC Exh. 5 (April 28, 2011 Letter)). Defendant Miller advised that Gorney's complaint did not fall under ABOR Policy 6–914 because it did not rise to the level of a matter of public concern. (FAC, Exh. 5 (April 28, 2011 Letter)). However, because such conduct may violate the University's Misuse of University Assets Policy, Defendant Miller referred the matter to the Senior Vice President and Chief Financial Officer, Business Affairs. (*Id.*).

Gorney claimed overtime incurred in drafting the disclosures. (FAC, ¶¶ 8, 10.18, 23.1). Defendant Husman, Gorney's supervisor, "required Mr. Gorney on more than one occasion to meet personally with him to discuss overtime and extra work hours ... related to the disclosure(s)." (FAC, ¶ 23.2). Claiming the disclosures were confidential, Gorney refused to meet with Defendant Husman. (FAC, ¶¶ 8, 23.2). Gorney was given a Written Warning, placed on Disciplinary Probation, and given a pre-discharge notice for his repeated refusal to meet with Defendant Husman to discuss his overtime claims. (*Id.; see also* FAC, ¶ 8 (Gorney refused to meet with Defendant Husman while on disciplinary probation)). Gorney also re-fused to meet with Defendant Husman for the disciplinary probation and pre-discharge meetings, because Gorney claimed that such "directives to meet with him were illegal." (FAC, ¶ 23.4). On May 25, 2011, Defendant Husman terminated Gorney for cause. (FAC, ¶ 24.2).

Gorney requested a post-termination hearing under University Policy 406.0. (FAC, ¶ 24.2). A hearing was held on May 15, 2012, and on June 22, 2012, the review panel issued the Hearing Decision upholding Gorney's termination. (FAC, ¶ 25; *see also* Defendants' Motion, Exh. B). On July 13, 2012, Defendant Mok accepted the panel's recommendation denying Gorney's appeal. (FAC, ¶ 25.1; *see also* Defendants' Motion, Exh. C). Gorney requested reconsideration of the decision, and on July 26, 2012, Defendant Mok affirmed her decision. (FAC, ¶ 25.3; *see also* Defendants' Motion, Exh. D). In her letter denying Gorney's request for reconsideration, Defendant Mok advised that he had the right to appeal her decision to the Superior Court pursuant to A.R.S. § 12–901, Arizona's Administrative Review Act, and that such appeal must be filed within 35 days from the date on which Gorney was served with the decision denying his request for reconsideration. (Defendants' Motion, Exh. D).

It undisputed that Gorney did not seek an appeal pursuant A.R.S. § 12–901. Instead, Gorney filed a separate complaint in state court which Defendants removed to this Court.

FAILURE TO APPEAL UNDER THE ARIZONA REVIEW ACT. "The Arizona Board of Regents is an agency subject to Arizona's Administrative Review Act." *Ernst v. Arizona Bd. of Regents,* 119 Ariz. 129, 131, 579 P.2d 1099, 1101 (1978) (citation omitted); *see also Carley v. Arizona Board of Regents,* 153 Ariz. 461, 737 P.2d 1099 (App. 1987) (state court reviewed appeal of em-

ployment-related decision under the Administrative Review Act). It is well-settled that "[w]hen a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties have had an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect to which it would be entitled in that state's courts." *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir.1999) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 798–99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir.1988)). However, the district court must first

> *independently* assess the adequacy of the state's administrative forum. "The threshold inquiry ... is whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment. This requires careful review of the administrative record to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions ... [A]lthough a federal court should ordinarily give preclusive effect when the state court would do so, there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down [for federal courts] in [*United States v.] Utah Construction [& Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) ]."

*Id.* (citation omitted). The *Utah Construction* criteria requires that: (1) the administrative agency act in a judicial capacity; (2) that the agency resolve disputed issues

of fact properly before it; and (3) the parties have an adequate opportunity to litigate. *Utah Construction*, 384 U.S. at 422, 86 S.Ct. 1545. Here, Gorney appeared before a hearing panel consisting of three members in addition to a Hearing Officer. (*See* Defendants', Exh. B). Gorney admitted 44 exhibits into evidence, made an opening statement, examined and cross-examined witnesses, called no witnesses but testified in his own behalf, and made a closing argument to the panel. (*Id.*). The panel and Hearing Officer issued a Hearing Report setting forth: a Hearing Summary; a Statement of the University Disciplinary Action Policy; Background of the Dispute; Findings of Fact; Conclusions; and Panel Recommendations. (*Id.*) The Hearing Decision also reflects that Gorney requested: "many forms of compensation and relief from the University, including reinstatement, back pay to June 1, 2011 with interest thereon, a written employment contract, liquidated damages under the Fair Labor Standards Act and compensation for penalties associated with early withdrawal of retirement funds." [2] (*Id.* at p. 4). After the Hearing Decision issued, Gorney was permitted to request reconsideration of the decision (Defendants' Motion, Exh. C), which he did, and which was denied. (Motion, Exh. D). In sum, the Court finds that the administrative hearing met the criteria set out in *Utah Construction.*

The record is clear that Gorney was informed of his right to file an appeal with the state superior court pursuant to Arizona's Administrative Review Act, A.R.S. § 12–901 *et seq.*, within 35 days from receipt of Defendant Mok's decision denying his request for reconsideration, (*see* Defendants' Motion, Exh. D), and Gorney did not do so.

---

**2.** The relief Gorney requested during the administrative proceeding is similar to the relief Gorney requests in his FAC. (*See* FAC, ¶¶ 29–32).

"Under Arizona law, a party's failure to appeal a final administrative decision makes that decision final and *res judicata.*" *Olson,* 188 F.3d at 1086 (citations omitted). "Under the doctrine of *res judicata,* a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Id.* (citing *Gilbert v. Board of Medical Examiners of the State of Arizona,* 155 Ariz. 169, 174, 745 P.2d 617 (1987), *superseded by statute on other grounds as stated in Goodman v. Samaritan Health Sys.,* 195 Ariz. 502, 508 n. 7, 990 P.2d 1061, 1067 n. 7 (App.1999)). Further, "[t]his doctrine binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated but also upon those points that might have been litigated." *Id.* Moreover, "[i]n Arizona, the failure to seek judicial review of an administrative order precludes collateral attack of the order in a separate complaint. If no timely appeal is taken, the [administrative] decision ... is 'conclusively presumed to be just, reasonable and lawful.' " *Id.* (quoting *Gilbert,* 155 Ariz. at 176, 745 P.2d 617); *see also Gilbert,* 155 Ariz. at 175, 745 P.2d at 623 ("if the propriety of the [board's] revocation order has been finally adjudicated, its propriety is conclusively established for purposes of any subsequent suit between [the board and the plaintiff] ... even if that lawsuit involves a different claim."). This principle applies even to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction of the appeal. *Olson,* 188 F.3d. at 1086; *Dommisse v. Napolitano,* 474 F.Supp.2d 1121 (D.Ariz.2007).

Additionally, under the doctrine of collateral estoppel, "a party may also be precluded from relitigating an issue against someone who was not a party to the original action, provided there was a full and fair opportunity to litigate the issue in the original action." *Gilbert,* 155 Ariz. at 175, 745 P.2d at 623. Accordingly, a plaintiff is precluded from filing an action against defendants who were not named parties to the administrative action where the pivotal issues have already been litigated and decided against the plaintiff during the administrative proceeding, and where the plaintiff failed to appeal the administrative proceedings. *See e.g. Dommisse,* 474 F.Supp.2d 1121; *Gilbert,* 155 Ariz. at 175, 745 P.2d at 617; *cf., Bridgestone/Firestone N. Amer. v. Naranjo,* 206 Ariz. 447, 452, 79 P.3d 1206, 1211 (App. 2003).

Defendants argue that because Gorney did not appeal the administrative decision, he is precluded from pursuing his present claims. That argument is well-taken. **WRONGFUL TERMINATION.** Gorney alleges that he was wrongfully terminated in violation of University policies and procedures and in violation of Arizona's whistleblower statute, 23 A.R.S. § 23–1501 *et seq.* (FAC, ¶¶ 10–10.19). Gorney's allegations refer to the three disclosures he made, his assertion that he was entitled to overtime under the FLSA for the time spent preparing the disclosures, and his assertion that he had a right to refuse to meet with Defendant Husman. (*See id.*).

The Hearing Decision sets out a detailed discussion concerning Gorney's disclosures, his claims for overtime, and his refusal to meet with Defendant Husman even though he was directed to do so. The parties' respective positions were described as follows:

> The College asserts that Gorney was directed to meet with supervision on eight separate occasions to discuss unapproved overtime claims and his insistence on working a non-standard work schedule. Gorney admits that he re-

fused to meet with supervision in response to each of the eight requests. Gorney asserts that the information sought by supervision concerning overtime claims and work schedule is "confidential" pursuant to the provisions of Policy 6–914. Also, on several occasions Gorney took the position that the requested face-to-face meetings would be a waste of time. (Response, Exh. B, p. 4). The panel's findings included that: supervisory employees, including Defendant Nelson, did not authorize in advance Gorney working overtime; Gorney repeatedly refused requests to meet with his supervisor; the information which supervision wished to obtain and discuss with Gorney was not "confidential" for purposes of the University whistleblower protection policy or otherwise; the meeting requests were reasonably necessary for supervision to effectively direct the work force, to assign work and to determine the extent and schedule of the College's business operations; and Gorney engaged in insubordination by repeatedly failing and refusing to comply with a supervisor's lawful and reasonable instructions and directives. (Id.). Therefore, the panel concluded that:

> Gorney committed repeated and serious violations of University rules and policies. He committed repeated acts of insubordination over the period of several months, and continued to work overtime hours without prior supervisory approval despite being warned about the serious consequences thereof. Gorney has not presented nor proven any meritorious defenses to the misconduct and policy violations presented and proven by the College.

(Id. at p. 5).

As Defendants correctly point out, if Gorney wished to attack the termination decision, he had to appeal that decision by way of the Administrative Review Act, which he did not do. Thus, the determination of the existence of sufficient grounds to terminate Gorney is conclusively established by the unappealed Hearing Decision and Gorney is precluded from challenging that decision now. *See e.g. Olson,* 188 F.3d 1083; *Dommisse,* 474 F.Supp.2d 1121; *Guertin v. Pinal County,* 178 Ariz. 610, 875 P.2d at 843 (App.1994); *Gilbert,* 155 Ariz. 169, 745 P.2d 617. Therefore, Gorney fails to state a claim of wrongful termination.

**■ 42 U.S.C. § 1983.** Gorney essentially recasts his wrongful termination claim as a claim that Defendants Mok, Miller, Husman, and Vaillancourt violated his rights under the First Amendment and the Fourteenth Amendment Due Process Clause (FAC, ¶¶ 11). For example, he claims that his disclosures fell within the whistleblower policy and statute and he asserts that Defendants retaliated against him and violated his constitutional rights by, *inter alia,* not following ABOR Policy 6–914, by failing to authorize overtime he incurred in making the disclosures, and by terminating his employment. (FAC, ¶¶ 11–25.3). Gorney also claims that in retaliation for his complaint filed with the Department of Labor regarding overtime violations, Defendant Vaillancourt delayed his posttermination review hearing six months and failed to inform him he was eligible for reemployment with the UA. (FAC, ¶¶ 24.3–23.4). Gorney further claims that Defendant Mok violated his constitutional rights by "collaborating" with the hearing review panel, denying him access to ABOR Policy 6–914, condoning Defendant Vaillancourt's delay of the post-termination review hearing, and denying Gorney's request for reconsideration. (FAC, ¶¶ 25–25.3).

■ Failure to appeal under the Administrative Review Act can preclude the later filing of constitutional claims in a separate action. *See Dommisse,* 474 F.Supp.2d at 1128. The issues Gorney raises here could have been brought before the hearing panel and/or on appeal before the state court. *See e.g. Olson,* 188 F.3d 1083 (*res judicata* barred section 1983 action against members of the Arizona Board of Psychologist Examiners); *Dommisse,* 474 F.Supp.2d at 1128 (plaintiff's failure to appeal barred constitutional claims). Gorney's failure to properly appeal the Hearing Decision precludes his instant claims under 42 U.S.C. § 1983.

**FLSA OVERTIME VIOLATION.** Gorney claims Defendants' violation of ABOR Policy 9–614, in failing to accord his disclosures whistleblower protection, in turn, resulted in retaliation against him in violation of the FLSA. (FAC, ¶¶ 26.1–26.5). In his Response to Defendants' Motion, Gorney argues that Defendant ABOR waived Eleventh Amendment immunity when it removed this suit to federal court. (Response, p. 2). In dismissing Gorney's original complaint, the District Court rejected Gorney's theory that Defendant ABOR waived its immunity by removing this action and, instead, held that the Eleventh Amendment precludes Gorney's suit against Defendant ABOR under the FLSA. (Doc. 25, p. 6). Accordingly, Gorney cannot state a FLSA violation claim against Defendant ABOR.

■ Moreover, with regard to the other Defendants, the FLSA issue was raised before the hearing panel. Gorney requested damages under the FLSA and testimony was taken and findings were made regarding Gorney's overtime claims. (*See* Response, Exh. B, pp. 3–4). Clearly, Gorney had the opportunity to raise his FLSA claim before the hearing panel and on appeal before the state court had he sought such appeal in accordance with the Administrative Review Act. Therefore, the Hearing Decision is conclusive as to Gorney's FSLA claim, and Gorney's failure to file an appeal under the Administrative Review Act precludes any further review. *See e.g. Olson,* 188 F.3d 1083.

■ **BREACH OF IMPLIED-IN-LAW COVENANT OF GOOD FAITH AND FAIR DEALING.** Gorney asserts that this claim "sounds in tort." (FAC, ¶ 15). When dismissing Gorney's original complaint, the District Court pointed out that "in Arizona, a 'tortious [ ]bad faith[ ] cause of action arising out of a breach of employment agreement, when no public policy is violated, is prohibited.' *Harris v. Superior Court of Arizona ex rel. County of Maricopa,* 278 F.3d [Fed. ]Appx. 719, 721 (9th Cir.2008) *citing Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 198 [888 P.2d 1375] (Ariz.Ct. of App.1994)." (Doc. 25, p. 15). As discussed *supra* the existence of sufficient grounds to terminate Gorney is conclusively established by the unappealed Hearing Decision. Therefore, Gorney is precluded from alleging in this action that he was terminated in violation of public policy. *See e.g. Guertin,* 178 Ariz. at 612, 875 P.2d at 845 (plaintiff who failed to appeal employment termination decision under the Administrative Review Act was precluded from filing a separate action alleging, *inter alia,* breach of covenant of good faith and fair dealing).

■ **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP.** Gorney alleges that Defendants Mok, Miller, Vaillancourt, and Husman acted outside the scope of their authority to tortiously interfere with his contractual employment relationship with the University. (FAC, ¶ 28). He further alleges that Defendants "collaborat[ed] with each other by refusing [him] access to policy 6–914 and condoning [his] unlawful termination from employment." (*Id.*).

When dismissing Gorney's claim of tortious interference with contractual relationship alleged in his original complaint, the District Court pointed out that because "the Defendants are all employees of the University and according to the Complaint were acting within the scope of their authority in assessing Plaintiff's disclosures, Defendants cannot be liable for interfering with Plaintiff's contractual relationship. *See Barrow v. Ariz. Bd. of Regents,* 158 Ariz. 71, 78 [761 P.2d 145] ... (Ariz.Ct. of App.1988) (an individual defendant that acts within the scope of his authority for Defendant's employer, could not interfere with their own contract.)." (Doc. 25, p. 16). Defendants point out that although Gorney now alleges that Defendants "acted outside the scope of their authority ..." (FAC, ¶ 28), Gorney supplies no factual allegations to support such a claim. (Motion, p. 11). Gorney counters that Defendants acted outside the scope their authority by violating University policies and rules, and state and federal laws. However, Gorney does not allege facts plausibly suggesting that Defendants were not acting as University employees when they allegedly violated such policies and laws or when they terminated him for insubordination. Therefore, Gorney fails to state a claim for tortious interference. (*See* Doc. 25, p, 16).

Moreover, inherent in Gorney's claim is that he was unlawfully terminated from employment. Again, the fact that there were sufficient grounds for Gorney's termination is conclusively established. *See e.g. Guertin,* 178 Ariz. 610, 875 P.2d 843 (plaintiff who failed to appeal decision under the Administrative Review Act was precluded from filing separate action alleging, *inter alia,* tortious interference with contract).

CONCLUSION

To seek redress for the claims raised in the instant FAC, Gorney was required to file an appeal of the termination decision pursuant to the Administrative Review Act, which he did not do. As such, Gorney is now precluded from raising his claims in a separate lawsuit. Moreover, in light of the preclusive effect of the Hearing Decision, Gorney's FAC should be dismissed without leave to amend. *See e.g. Cook, Perkiss and Liehe, Inc. v. Northern Calif. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir.1990) (court need not grant leave to amend where it determines that the pleading could not possibly be cured by the allegation of other facts).

RECOMMENDATION

For the following reasons the Magistrate Judge recommends that the District Court, after its independent review, grant Defendants' Motion to Dismiss (Doc. 33) and dismiss the First Amended Complaint without leave to amend.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 13–0023–TUC–CKJ.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to de novo review of the issues. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (en

banc), cert. denied, 540 U.S. 900, 124 S.Ct. 238, 157 L.Ed.2d 182 (2003).

Dated this 31st day of July, 2014.